IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KURTIS RONINGEN,

       Plaintiff,      OPINION & ORDER

 v.

                     13-cv-550-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

   Plaintiff Kurtis Roningen seeks judicial review of a final decision of the Commissioner of Social Security denying his claims for disability benefits. Plaintiff contends, principally, that remand is warranted because the Administrative Law Judge (ALJ): (1) wrongly discredited the opinions of plaintiff's treating physician, Dr. Hinderacker; (2) mishandled the opinion of a consultative examining physician, Dr. Henningsen; and (3) failed to reflect plaintiff's limitations in concentration, persistence and pace in the hypothetical questions posed to the vocational expert.

   The ALJ has done a largely creditable job explaining why he found that plaintiff's reports of his symptoms were not consistent with the record as a whole. This record could support the denial of benefits, if the basis for the ALJ's appraisal of the medical opinions was set out more completely and systematically. Remand is warranted so that the ALJ can expressly set out the factors considered in discounting the opinions of Dr. Hinderacker and Dr. Henningsen. Remand is also warranted so that the ALJ can make clear whether plaintiff's residual functional capacity (RFC) includes limitations in plaintiff's ability to maintain concentration, persistence and pace. On remand, the questions posed to the VE should clearly reflect all limitations that the ALJ finds are supported by the record.

BACKGROUND

**A. Procedural Background**

Plaintiff, born in 1966, has a high school education. He last worked part-time in 2006. Plaintiff had worked as a mechanic, a driver of tow-trucks and taxis, and in medical transportation.

Plaintiff had previously received benefits from November 2002, primarily on the basis of a mental impairment caused by an organic brain injury. Medical improvement of plaintiff's impairment was possible, so plaintiff's case was scheduled for a continuing disability review in 2005. The state agency determined that plaintiff was no longer disabled as of January 2006. A disability hearing officer affirmed that determination. Plaintiff requested a hearing before an ALJ, who also found that plaintiff's disability had ceased. The Appeals Council remanded the matter with instructions to the ALJ in February 2010.

The decision at issue in this case followed the remand order. Plaintiff had a second hearing before ALJ Stephen J. Ahlgren on September 10, 2010. On May 18, 2011, the ALJ issued a decision concluding that plaintiff continued to have the impairments that he had in 2002, along with a new impairment, coronary artery disease. The ALJ determined that plaintiff's impairments did not meet or equal a listed disability. The ALJ found that plaintiff had the RFC to perform light-duty jobs, with the further limitation to simple, unskilled job tasks. With these limitations, the ALJ found that plaintiff could perform a number of representative occupations that were available in significant numbers in the national economy. R. 12-24.[1] Plaintiff's request for review was denied by the Appeals Council, making ALJ Ahlgren's decision the final determination of the Commissioner. Plaintiff timely sought judicial review in this court pursuant to 42 U.S.C. § 405(g).

---

[1] The record citations are to the Administrative Record, Dkt. 10.

**B.  Relevant Medical Evidence**

Plaintiff was found disabled and had received benefits beginning in November 2002, primarily because of a mental impairment caused by an organic brain injury, a substance addiction which was in remission at the time, and an affective disorder. He had a heart attack in November 2004 and, since then, has had a history of cardiac impairments and treatment. Plaintiff also has a history of depression, bipolar disorder, and substance abuse. The issue in this case is whether plaintiff was disabled as of January 1, 2006, the date of the decision on his continuing disability review. Medical evidence after that date is relevant only because it may inform the seriousness of plaintiff's impairments as of January 1, 2006. The court summarizes the evidence from this timeframe below. Given the issues raised by plaintiff, the opinions of Drs. Hinderacker and Henningsen are particularly pertinent.

In January 2006, Mina Khorshidi, MD, prepared a Physical Residual Functional Capacity Assessment. R. 602-09. She indicated that plaintiff had some exertional limitations, but no postural, manipulative, visual, communicative, or environmental limitations.

Six months later, plaintiff went to Mile Bluff Medical Center seeking pain relief for his right shoulder. R. 760. In his treatment notes, Timothy R. Hinton, MD, suggested that plaintiff was inappropriately seeking narcotics, particularly Vicodin. Dr. Hinton surmised that plaintiff came to the clinic at 3 a.m. because he thought Dr. Hinton would not have access to his medical records. Plaintiff initially denied receiving a prescription the previous week, but later acknowledged receiving one and claimed that "perhaps his roommates took some of the pills." *Id.*

In August 2006, Dar Muceno, MD, also prepared a Physical Residual Functional Capacity Assessment. R. 637-43. She indicated that plaintiff had some exertional, postural, and manipulative limitations, but no visual, communicative, or environmental limitations. Overall,

Dr. Muceno's report advised greater limitations than Dr. Khorshidi's January 2006 report. However, both physicians suggested that plaintiff could work.

Also in August 2006, Keith Bauer, PhD, prepared a Psychiatric Review Technique Assessment. R. 651-64. Dr. Bauer determined that plaintiff was depressive and bipolar, with certain substance addiction disorders. With respect to functional limitations, Dr. Bauer opined that plaintiff had mild limitations in daily living activities and social functioning, and moderate limitations in concentration, persistence, or pace.

On January 22, 2008, plaintiff was admitted to Meriter Hospital for chest pain. The report summarized his condition and treatment since his heart attack in November 2004. R. 692-94. He experienced chest pains on January 22 and underwent a cardiac catheterization, echocardiogram, and chest x-ray. The results were "stable" or "normal" overall. Upon discharge, he was put on a cardiac diet and instructed not to lift, push, or pull more than 10 pounds in the next week. It appears that Balasubramanian Jayalakshmi, MD, was plaintiff's physician that day, but Dr. Hinderaker was copied on the paperwork. Dr. Hinderaker was plaintiff's treating physician at Meriter and Mile Bluff.

A few months later, Dr. Hinderaker prepared a Cardiac Residual Functional Capacity Questionnaire dated June 26, 2008. R. 687-90. In it, Dr. Hinderaker noted that he saw plaintiff every four months and diagnosed him with heart disease, bipolar disorder, chronic lung disease, and chronic pain syndrome. Indicating that plaintiff's physical activity was limited (which caused emotional difficulties), Dr. Hinderaker opined that plaintiff was incapable of even low-stress jobs. He further opined that plaintiff's cardiac symptoms were severe enough to interfere frequently with his attention and concentration. In the context of a competitive work situation, Dr. Hinderaker stated that plaintiff would: be able to walk less than one block; be able to sit or stand for less than two hours; need unscheduled breaks; never be able to lift 50 pounds; rarely

4

be able to lift 20 pounds; and occasionally be able to lift 10 pounds or less.

On November 13, 2009, Dr. Hinderaker sent a letter to plaintiff's attorney. R. 114-15. In it, Dr. Hinderaker mentioned that he had sent a note to plaintiff's attorney regarding plaintiff's July 2009 clinic visit. Dr. Hinderaker also summarized his opinions on plaintiff's impairments and limitations, concluding that plaintiff could not work full-time but could work part-time. Plaintiff's heart disease was a main factor in Dr. Hinderaker's assessment; this impairment had its roots in plaintiff's November 2004 heart attack. Dr. Hinderaker also noted plaintiff's other impairments, such as chest pain and neuropsychiatric issues.

John Henningsen, MD, prepared two opinions dated January 12, 2011. In his first opinion, Dr. Henningsen completed a Social Security Administration "Medical Source Statement Of Ability To Do Work-Related Activities (Physical)," which is a form largely consisting of checkboxes, yes-or-no responses, and numerical selections. R. 1562-68. The form had eight main sections relating to: lifting/carrying; sitting/standing/walking; use of hands; use of feet; postural activities; hearing/vision; environmental limitations; and daily activities. Dr. Henningsen indicated that plaintiff could: never lift more than 50 pounds; occasionally lift and carry 21 to 50 pounds; occasionally lift and frequently carry 11 to 20 pounds; and frequently lift and carry up to 10 pounds. With respect to sitting, Dr. Henningsen indicated that plaintiff would be able to sit for four to five hours per work day, but only for one hour at a time. Plaintiff would be able to stand for two hours, but for one hour at a time. Plaintiff would be able to walk from one to two hours, but for twenty minutes at a time. Dr. Henningsen's assessment of plaintiff's potential use of his hands and feet was that he would "frequently" be able to perform the listed activities, such as reaching and fingering. In terms of activities like climbing stairs, stooping, and kneeling, Dr. Henningsen indicated that plaintiff would be able to perform them "occasionally." There were no hearing or vision impairments. Finally,

Dr. Henningsen indicated that plaintiff would be able to tolerate most of the listed environmental limitations "occasionally" (unprotected heights; dust, odors, fumes, and pulmonary irritants; extreme cold/heat; and vibrations), and two of them "frequently" (moving mechanical parts and operating a motor vehicle).

In his second opinion, Dr. Henningsen submitted a letter report. R. 1559-61. The letter report was his narrative opinion evaluating plaintiff after an examination, during which plaintiff was "pleasant and cooperative." Dr. Henningsen noted that plaintiff had a history of heart issues. However, a recent treadmill test "looked good" to the cardiologist. In addition to briefly describing plaintiff's medical and other history, Dr. Henningsen provided the results of the physical examination. He concluded that plaintiff had coronary artery disease and chronic obstructive pulmonary disease with continued smoking. Dr. Henningsen also wrote: "The patient has worked as a mechanic in the past. Based on this exam it would seem reasonable that he could continue this type of work. Extremely heavy lifting or activity would probably be reasonable to avoid for a sustained period of time." *Id.*

**C.  The Administrative Hearing and Decision**

On September 10, 2010, ALJ Ahlgren held a 48-minute hearing during which he took testimony from two witnesses, plaintiff and David Ostwald, a vocational expert (VE). R. 1571-98. The documentary evidence, including plaintiff's medical records summarized above, was admitted without objection.

The ALJ asked plaintiff about his work history, his daily activities, and the reasons why he was unable to work. Plaintiff testified that he could probably work part-time, but he would need a job that accommodates his slower pace and difficulty with concentration.

The ALJ asked the VE a series of hypothetical questions involving a person with plaintiff's limitations, all of which assumed a person of plaintiff's age and education. R. 1590-

6

92. The VE testified that plaintiff could not do past work given the ALJ's initial limitations: lifting no more than 20 pounds occasionally and 10 pounds frequently; standing and walking six out of eight hours per day; and unskilled, routine work. However, the VE opined that plaintiff could work as a: cashier; parking lot attendant; machine feeder; machine tender; weigher, measurer, or checker; packager or packaging-machine tender; assembly line worker; and fast-food worker. The VE stated that there were significant numbers of such positions in Wisconsin. Upon further questioning, the VE explained that none of these jobs would require plaintiff to follow detailed instructions, but they would require plaintiff to maintain his attention and pace despite their routine nature.

Finally, the ALJ and plaintiff's attorney discussed plaintiff's chest pain and potential absenteeism. R. 1593-97. They agreed that most employers would tolerate about 10 days of absences per year.

The ALJ issued a decision on May 18, 2011, concluding that plaintiff had not been disabled since January 1, 2006. In short, the ALJ discounted the reports of Dr. Hinderaker, plaintiff's treating provider, whose assessment of plaintiff's limitations was found to be more restrictive than the objective evidence and contradictory to the opinions of three other physicians. R. 22. The ALJ found plaintiff to be less than credible, citing plaintiff's history of drug-seeking behavior and highlighting the fact that plaintiff's subjective complaints were not consistent with the objective evidence. R. 19-21. The ALJ also found plaintiff to have moderate limitations in concentration, persistence, or pace. R. 18. The ALJ concluded that plaintiff was physically able to perform the full range of light work, but his mental impairments would limit him to simple, unskilled tasks. The ALJ further concluded that, although plaintiff could not perform his past relevant work, there were jobs available that required only light-duty work, limited to simple, unskilled tasks. For these reasons, the ALJ determined that plaintiff was not

under a disability within the meaning of the Social Security Act as of January 1, 2006.

## ANALYSIS

This matter arises from the appeal of a medical improvement determination under 20 C.F.R. § 404.1594, which requires the ALJ to follow an eight-step analysis. This framework requires the ALJ to make intermediate determinations concerning the status of plaintiff's original impairments before making a determination of the claimant's RFC in light of all his current limitations. Plaintiff raises no issue with the intermediate steps followed by the ALJ. Plaintiff objects only to the ALJ's determination of plaintiff's RFC as of January 1, 2006, and to the ALJ's questions posed to the VE, which plaintiff contends did not reflect all of plaintiff's limitations as of that date. Thus, the issue in this case concerns only plaintiff's impairments as of January 1, 2006, regardless of whether they resulted from the old impairments or new ones.

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v.*

8

*Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

### A. Plaintiff's treating physician, Dr. Hinderaker

Plaintiff contends that the ALJ wrongly discounted the opinions of Dr. Hinderaker, plaintiff's treating physician, who prepared a June 2008 questionnaire, R. 687-90, and a November 2009 letter to plaintiff's attorney, R. 114-15, both regarding plaintiff's limitations and ability to work in view of his cardiac and other issues.

Plaintiff is correct that the ALJ was obligated to carefully consider Dr. Hinderaker's opinions. Social Security regulations assure claimants that "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). The "treating physician rule" provides that a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c). A treating physician's opinion is consistent if "there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p. An example of inconsistency is "when two medical sources provide inconsistent medical opinions about the same issue." *Id.*

As the court's summary of the medical evidence demonstrates, there were obviously conflicting opinions on plaintiff's limitations and ability to work. The ALJ explicitly recognized inconsistencies between Dr. Hinderaker's opinions and those of Drs. Khorshidi, Muceno, and Henningsen. R. 22. The ALJ was thus not required to give Dr. Hinderaker's opinions controlling

weight under the treating physician rule, because his opinions were contradicted by the non-examining state agency reviewers. SSR 96-2p; *see Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (determining that the treating source rule does not apply when "[t]here was evidence—the report of the nonexamining consultant—that contradicted the reports of the treating physicians"); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) ("Dr. Woldum's opinion was also inconsistent with the opinions of Dr. Steiner and the State Agency Medical Consultants, and at least partially inconsistent with the conclusions of several other physicians. Accordingly, we reject White's 'treating physician rule' argument."). The opinions of state agency experts can be evidence supporting an ALJ's decision. *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004).

Plaintiff objects to Dr. Hinderaker's finding that plaintiff engaged in drug-seeking behavior that undermined the credibility of plaintiff's subjective complaints of pain. The fact that some physicians prescribed some pain medication does not undermine the ALJ's conclusion on this point because there is substantial evidence to support the ALJ's finding. This court may not re-weigh the evidence. *Clifford*, 227 F.3d at 869. The ALJ's finding concerning plaintiff's drug-seeking is supported by the evidence, and the ALJ may consider this fact in evaluating plaintiff's credibility.

But the analysis does not end here. The ALJ must "provide an account of what value the treating physician's opinion merits." *Jelinek*, 662 F.3d at 811. Even if a treating physician's opinion is not entitled to controlling weight, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted." SSR 96-2p. In weighing medical opinions, the ALJ should explicitly consider the: (1) length, nature, and extent of the treatment relationship; (2) frequency of examination; (3) physician's specialty; (4) types of tests performed; and (5) consistency and supportability of the physician's opinion. *Scott v. Astrue*, 647

F.3d 734, 740 (7th Cir. 2011) (citations omitted); 20 C.F.R. § 404.1527(c). On appeal, the Commissioner cannot cure deficiencies in the ALJ's explanation by supplying her own evaluation of a medical opinion, nor is it appropriate for this court to engage in its own analysis of the factors—"what matters are the reasons articulated *by the ALJ*." *Jelinek*, 662 F.3d at 812 (original emphasis).

Although the ALJ did a creditable job of explaining his decision to reject plaintiff's testimony about the seriousness of his symptoms, the ALJ did not fully analyze the § 1527(c) factors in discounting Dr. Hinderaker's opinions. The failure to explicitly discuss the § 1527(c) factors is itself a deficiency that warrants remand. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (reversing an ALJ even when her "decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927 [but] does not *explicitly address the checklist of factors* as applied to the medical opinion evidence") (emphasis added). The ALJ is not required to mechanically walk through all of the § 1527(c) factors, but he must explain each factor that is material to his decision. In particular, on remand, the ALJ should address the treatment relationship between Dr. Hinderaker and plaintiff, the frequency of Dr. Hinderaker's contact with plaintiff, and Dr. Hinderaker's specialty (cardiology)—each of which would militate in favor of according weight to Dr. Hinderaker's opinions. The ALJ should also be careful to point out specifically which of Dr. Hinderaker's opinions are contradicted by which medical records or other evidence. The court does not mandate that the ALJ give Dr. Hinderaker's opinions more or less weight; but the ALJ should frame his analysis with the § 1527(c) factors.

## B.  Consultative Examiner, Dr. Henningsen

Plaintiff makes three complaints about the ALJ's treatment of the consultative examiner, Dr. Henningsen.

First, plaintiff contends that Dr. Henningsen's opinion should not have been given more

11

weight than Dr. Hinderaker's because Dr. Hinderaker was a treating physician, whereas Dr. Henningsen only examined plaintiff. This argument gets nowhere. The ALJ must weigh all medical opinions by considering the § 1527(c) factors. The fact that Dr. Hinderaker is a treating source counts in his favor, but it is not dispositive alone. If the ALJ applies the § 1527(c) factors, he can decide which opinion to weigh more heavily.

Second, plaintiff contends that the ALJ should have incorporated the physical limitations in Dr. Henningsen's report into the RFC. This is a point of confusion in the ALJ's decision and in plaintiff's brief, because it is not clear which of Dr. Henningsen's limitations the ALJ accepted, and it is not clear which limitations plaintiff believes the ALJ rejected. Dr. Henningsen restricted plaintiff to standing no more than two hours per day and walking one or two hours per day. The ALJ limited plaintiff to light work, which may include significant walking or standing. 20 C.F.R. § 404.1567. The ALJ also credited Dr. Henningsen's statement that plaintiff could return to his previous work as a mechanic. The Commissioner argues that it is common sense that the work of a mechanic is not sedentary, and thus it is clear that the ALJ had rejected Dr. Henningsen's standing and walking restrictions. But this is not a matter that should be left to a vague notion of what might be common sense. On remand, the ALJ should expressly articulate which of Dr. Henningsen's restrictions he is including in the RFC.

Plaintiff's third argument is that the ALJ failed to incorporate Dr. Henningsen's opinions into the hypothetical questions posed to Mr. Ostwald, the VE. If the ALJ gives proper consideration to Dr. Henningsen's opinions under the § 1527(c) factors, he should be able to pose apt questions to the VE.

**C. Vocational Expert**

Plaintiff contends that the ALJ failed to fully incorporate plaintiff's limitations into the hypothetical questions posed to the VE. Most of the issues with the questions posed to the VE

12

will be resolved if the ALJ properly considers the opinions of Drs. Hinderaker and Henningsen under the § 1527(c) factors. But there is one more issue: it is not clear whether the RFC includes a limitation in concentration, persistence or pace. It appears that the ALJ found plaintiff to have moderate limitations of concentration, persistence or pace. R. 18, 22. But the RFC includes only a limitation to simple, unskilled tasks.

An ALJ's hypothetical questions to a vocational expert "must account for documented limitations of concentration, persistence or pace." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The court of appeals recommends that ALJs "refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the [vocational expert]'s attention on these limitations and assure reviewing courts that the [vocational expert]'s testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). However, there is no "per se requirement that . . . specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* at 619.

The ALJ characterized the VE as having addressed "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity as of January 1, 2006." R. 23. But the ALJ's examination of the VE did not expressly address plaintiff's limitations in concentration, persistence and pace. The ALJ's questioning of the VE on this topic was brief:

> Q: Do any of those jobs require a person to carry out detailed instructions?
>
> A: No.
>
> Q: Do any of those jobs require a person to maintain attention and extension—for an extended period of time?
>
> A: He has to maintain his attention while he's working. For that period.

13

> Assembly, for instance, he's going to have to maintain his work pace, so—but attention to detail, those kinds of things. The tasks are relatively routine. The detail of—the type of work is going to be the same. In cashiering, you're basically—the change that you give and the amount is provided by the cash register.
>
> ALJ: Okay. I don't think I have any further questions.

R. 1592.

It is not necessary for the ALJ to use the magic words "concentration, persistence and pace," but those concepts must be addressed. In this case, the ALJ's inquiry did not elicit a well-considered answer to whether the plaintiff's limitations in maintaining concentration, persistence and pace would affect the jobs available to plaintiff. *C.f.*, *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). The court cannot assume in this case that the VE's answers considered plaintiff's limitations in this area. Although the VE heard plaintiff's testimony regarding his limitations, there is no indication that the VE incorporated those limitations when he answered the ALJ's hypothetical question. The testimony about the nature of the work plaintiff would have to do if employed in the identified jobs, R. 1592, does not reflect that concentration, persistence and pace were taken into account in the ALJ's hypothetical question or the VE's list of potential jobs. R. 1590-92; *c.f.*, *O'Connor–Spinner*, 627 F.3d at 619-20. On remand, the ALJ should direct the vocational expert to consider all of the mental limitations that the ALJ finds plaintiff to have.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Kurtis R. Roningen's application for disability benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

      Entered this 30th day of September, 2014.

                                          BY THE COURT:
                                          /s/
                                          JAMES D. PETERSON
                                          District Judge